[Cite as *Jolette v. A T L M, Inc.*, 2013-Ohio-3143.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99173**

## NICOLE A. JOLETTE

PLAINTIFF-APPELLANT

vs.

## A T L M, INC., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-750704

**BEFORE:**  Stewart, A.J., S. Gallagher, J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**  July 18, 2013

**ATTORNEY FOR APPELLANT**

David L. Meyerson
Seaman Garson, L.L.C.
1600 Rockefeller Building
614 West Superior Avenue
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEE ADMINISTRATOR OF THE BUREAU OF WORKERS' COMPENSATION**

Mike DeWine
Attorney General

BY:    Timothy X. McGrail
Assistant Attorney General
Workers' Compensation Section
State Office Building, 11th Floor
615 West Superior Avenue
Cleveland, OH    44113

MELODY J. STEWART, A.J.:

{¶1} Following a bench trial, the court denied claimant-appellant Nicole Jolette's appeal from an Industrial Commission order denying her application for an additional allowance of compensation for a work-related injury to her ankle. In making that decision, the court noted that Jolette suffered a subsequent injury to the same ankle yet failed to inform any of the four medical providers who treated her for that injury. The court thus found that the expert conclusions that Jolette's complaints stemmed from the earlier allowance were rendered invalid because they did not consider whether Jolette's current condition was the product of an intervening cause. Jolette argues that the court erred in reaching this conclusion because the Bureau of Workers' Compensation ("bureau") failed to plead intervening injury as an affirmative defense and did not offer any expert medical opinion in support of that defense. She also argues that the court abused its discretion by failing to bar the bureau from offering any evidence of an intervening injury.

{¶2} We find no reversible error. The bureau did not offer, nor did the court consider, evidence of an intervening injury as proof of a break in the chain of causation between the allowed injury and the request for an additional allowance, so any argument about excluding that evidence was irrelevant. Instead, the court rationally concluded that Jolette's failure to inform her medical providers of the subsequent injury rendered their

opinions invalid in deciding whether her current condition was grounds for an additional allowance.

I

{¶3} Jolette's sole assignment of error is that the trial court erred in denying her request for an additional allowance for the condition of reflex sympathetic dystrophy ("RSD") and in permitting the bureau to raise and argue intervening injury as an affirmative defense. The parties tried the case on the briefs and arguments of counsel, medical reports, and Jolette's videotaped deposition. The court made factual findings in a written opinion, none of which are contested by Jolette on appeal, so we state those findings in summary form.

{¶4} Jolette suffered a work-related, broken ankle in 1999. Her treatment consisted of the insertion of metal plates and screws to stabilize the ankle. Jolette experienced continuing pain in the ankle, so her surgeon removed the plates and screws and began a course of physical therapy. By September 2000, the surgeon noted that Jolette "is doing well in therapy. Really has great motion in her foot and ankle at this time." Jolette did not seek any additional treatment with the surgeon.

{¶5} In May 2001, Jolette moved to Florida. While working for a cleaning service, she reinjured the same ankle. She claimed to have sought medical treatment for the injury, but offered no medical records to substantiate that claim. She did, however, testify that the doctor she visited believed that she may have broken the ankle again. Jolette also testified that she claimed workers' compensation benefits for that injury.

{¶6} By April 2003, Jolette began experiencing pain in her ankle and sought treatment. She told a doctor that she injured the ankle in 1999, but failed to make any mention of the 2001 injury. As the pain in her ankle persisted, she saw another three doctors for pain management. While all of the doctors mentioned the 1999 injury in their notes, none of them mentioned the 2001 injury. In fact, one of the doctors specifically noted that Jolette denied having any intervening injuries since 1999.

{¶7} In August 2009, Jolette filed a claim for an additional allowance for the 1999 injury, claiming reflex sympathetic dystrophy, a chronic pain condition. A district hearing officer denied the claim, relying on the opinion of an independent medical examiner who, while noting that Jolette had chronic pain in her ankle, thought that her "complaints and presentation is inconsistent with reflex sympathetic dystrophy." The claim was further denied by a staff hearing officer and the Industrial Commission, both of whom determined that Jollette did not suffer from RSD.

{¶8} In its conclusions of law, the court found that Jolette's failure to inform any of her doctors, or the independent medical examiner, of the 2001 injury essentially tainted their opinions that Jolette suffered from RSD as a result of the 1999 injury, thus rendering those opinions invalid. The court stated: "without the pertinent information that Plaintiff sustained a second injury to her left ankle after the 1999 incident, any opinion formed by Plaintiff's treating doctors or Defendant's [independent medical examiner] cannot [be] fully accepted." In other words, the court did not specifically find that Jolette did not suffer from RSD, but that it could not give credit to the opinions of the

physicians because those opinions were not based on complete medical information —
the record indicates that the experts had no knowledge of the fact that Jolette suffered an
intervening injury that may well have affected their ultimate conclusions regarding the
cause of her ankle pain.

## II

{¶9} The substance of Jolette's appeal is that the court erred by considering the
issue of intervening cause. First, she argues that the bureau did not properly raise
intervening cause as an affirmative defense, so it should have been barred from asserting
it at trial. Second, she maintains that none of the experts mentioned intervening cause,
so it was wrong of the court to find that her claims were dependent on proving that there
was no intervening cause — in effect forcing her to prove a negative.

## A

{¶10} "In order to establish a right to workmen's compensation for harm or
disability claimed to have resulted from an accidental injury, it is necessary for the
claimant to show by a preponderance of the evidence, medical or otherwise, not only that
his injury arose out of and in the course of his employment but that a direct and proximate
causal relationship existed between his injury and his harm or disability." *Fox v. Indus.
Comm.*, 162 Ohio St. 569, 125 N.E.2d 1 (1955), paragraph one of the syllabus.
Causation can be broken, however, by "intervening or superseding causes." *Id*. at 575.
An intervening injury will not necessarily break the chain of causation between the
allowed injury and any further claim for allowance, but the record "must include evidence

by competent medical witnesses that a probable relationship existed between the original accident and [the claimant's disabling condition]." *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56, 57, 689 N.E.2d 30 (1998), citing *Fox* at 575.

B

**{¶11}** Jolette's argument mischaracterizes the bureau's use of the 2001 injury as one arguing that her right to an additional allowance was barred because she suffered an intervening injury. The bureau did not argue at trial that intervening cause was an absolute defense to Jolette's claim for an additional allowance of the 1999 injury. In fact, the bureau argued the opposite:

> Furthermore, the Bureau of Workers' Compensation likewise probably had no idea of it [the 2001 injury] because none of the medical records they ever had would have contained mention of this particular injury. So when that - - We are not here to say that caused her RSD. We are just saying it obviously affects the quality of her doctors' records, and their doctors' opinions and diagnoses if they are not aware of this subsequent ankle fracture. It also goes to her credibility, too, as to why she would not, when asked about her past medical history, why she would not mention she also fractured her ankle in Florida two years after this one.

**{¶12}** The court accepted the bureau's argument, affording no weight to Jolette's expert opinions that her current condition stemmed from the 1999 ankle injury, because those opinions had not been formed with the knowledge that she suffered an additional injury to the same ankle in 2001. Importantly, the court did not say that the 2001 injury was an intervening injury that completely broke the chain of proximate causation. Instead, it found that any expert opinion regarding the cause of her injury, made without the knowledge that Jolette had injured her ankle in 2001, "cannot be accepted as valid."

{¶13} Having acknowledged the manner in which the court considered the impact of the 2001 injury, we must reject Jolette's next argument that the court erred by failing to grant her motion in limine to exclude the bureau from offering any evidence of an intervening injury. As discussed, the bureau did not argue, nor did the court consider, that the 2001 injury was proof that the chain of causation between the 1999 injury and the request for an additional allowance for that injury had been broken by an intervening injury. Rather, Jolette's failure to mention the 2001 injury to her health care providers was used to impeach her credibility and call into question the completeness of her expert opinions. Viewed in this light, the court did not abuse its discretion by denying Jolette's request that the bureau be prohibited from mentioning the 2001 injury.

C

{¶14} Finally, Jolette argues that her four experts all agreed that she had RSD, and that this evidence was weightier than the single expert report offered by the commission. In addition, she argues that even though her experts did not mention the 2001 injury in their reports, this does not mean that they were unaware of that injury. She argues that the court should not have assumed as much absent evidence offered by the commission proving what her experts knew and how such knowledge would impact their opinions.

{¶15} The court stated that the issue in this case is: "whether [Jolette] is entitled to particpate in the Ohio Workers' Compensation system for the condition of [RSD]." The previous denials of Jolette's claim were all premised on the report of Paul Scheatzle, D.O., who performed an independent medical examination of Jolette. He found no

objective signs to confirm the presence of RSD, thus the denials of her claim were based on the finding that she did not have RSD. As previously noted, the court did not specifically rule on whether Jolette suffered from RSD. It instead found that her failure to inform any of her experts that she suffered the 2001 injury meant that her expert opinions were not made "with a full understanding" of her medical condition. On that basis, the court ruled that Jolette "has failed to satisfy her burden of showing that her request for the 'additional allowance' for the condition of [RSD] and the denial of said claim by the Industrial Commission was appropriate."

{¶16} Although the court arguably did not address the substantive issue of whether Jolette actually had RSD, it did not have to do so. Jolette herself characterized the issues before the court as comprising two parts: (1) did she suffer from RSD and (2) "is the condition of RSD of the left ankle proximately related to the work injury of December 18, 1999" These two findings were correctly stated as being conjunctive — Jolette could only prevail if both questions were answered affirmatively. The court's judgment centered on the second finding alone, so it could affirm the commission's decision regardless of whether it explicitly found that Jolette suffered from RSD. The court focused on the broader question of whether Jolette demonstrated that she was entitled to an additional allowance from the Ohio Workers' Compensation system; not whether she actually suffered from RSD.

**{¶17}** We must affirm the court's findings of fact if they are supported by competent, credible evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 14.

**{¶18}** It is undisputed that at the time she reinjured her ankle in 2001, Jolette had no further complaints stemming from the 1999 injury. By her own admission, a doctor told her that she may have broken her ankle in 2001, yet Jolette did not tell any of the four doctors who subsequently treated her that she reinjured that ankle in 2001. In fact, she pointedly denied to one doctor that she suffered any other injury to the ankle apart from the 1999 incident. The court rationally concluded that Jolette's 2001 injury would have great relevance to any opinion these experts might render, so her failure to inform these doctors of the 2001 injury to her ankle made their opinions lack the necessary weight to persuade the court that she was entitled to additional compensation from the Ohio fund.

**{¶19}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MELODY J. STEWART, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., CONCURS;

SEAN C. GALLAGHER, J., DISSENTS WITH
SEPARATE OPINION

SEAN C. GALLAGHER, J., DISSENTING:

**{¶20}** I respectfully dissent from the majority opinion.

**{¶21}** The expert opinions provided by Jolette concluded that she suffered from RSD of the left ankle. The bureau's assertion that Jolette's medical experts failed to consider her 2001 foot injury was nothing more than an attempt to invoke an affirmative defense of an intervening injury. While the bureau phrased its argument as an "incomplete medical history," the actual issue was whether the 2001 foot injury was an intervening cause of the condition. The bureau failed to assert this affirmative defense in the complaint and failed to present any medical evidence or expert opinion to support the affirmative defense of an intervening injury. Therefore, the trial court erred in deciding the matter on this basis. Furthermore, insofar as any assertion of an incomplete medical history was pertinent to the credibility and weight of the expert opinions, without evidence pertaining to the affirmative defense of an intervening injury or testimony that an incomplete medical history would have changed the diagnosis, the trial court had no basis for rendering the expert opinions unreliable. *See Alexander v. Groosbeck*, 6th Dist. No. L-94-062, 1995 WL 84734 (Mar. 3, 1995).

**{¶22}** I believe the trial court abused its discretion in failing to address whether the bureau could raise the affirmative defense and by deciding the action upon invalidating the medical reports. The trial court erred in failing to consider the issues presented of whether Jolette suffers from the additional medical condition of RSD of the left ankle and whether the condition is proximately related to the work injury of December 18, 1999.

**{¶23}** For these reasons, I would reverse the judgment of the trial court and remand the matter for a new trial.